## Case No. 17,388.

In re WELLS.

[3 N. B. R. 371 (Quarto, 95);[1] 2 Chi. Leg. News, 49.]

District Court, D. Nevada. Nov., 1869.

BANKRUPTCY—INSOLVENCY DEFINED—INVOLUNTARY PROCEEDINGS.

1. *Held*, when a man's property is taken on legal process against him, that if all his property were sold, and would not produce money enough to pay his debts, that he is insolvent within the meaning of the law.

2. A solvent man is one that is able to pay all his debts in full as they become due.

3. It is the duty of one who is insolvent to apply to the bankrupt court in his own behalf, and if he does not, and some of his creditors take his property under legal process, he may be held to have suffered his property to be taken, and may be adjudged a bankrupt at the instance of creditors whose claims have not been provided for.

[Cited in Starkweather v. Cleveland Ins. Co., Case No. 13,308; Beattie v. Gardner, Id. 1,195; Re Heller, Id. 6,337; Haskell v. Ingalls, Id. 6,193; Re Dunkle, Id. 4,160.]

[Cited in Cook v. Whipple, 55 N. Y. 156.]

In bankruptcy.

BALDWIN, District Judge (charging jury). This is an application by McDonnell and Wood to have J. L. Wells adjudicated a bankrupt under the provisions of section 39 of the national bankrupt act [of 1867 (14 Stat. 536)]. The petitioners allege that Wells, being insolvent, did, on the 12th day of October, 1869, suffer his property to be taken on legal process, at the suit of one McCausland, with the intent thereby to give a preference to the said McCausland, and to delay and to defeat the operation of the bankrupt act. The respondent pleaded the general issue to the petition, the effect of which is to present the facts involved for our determination. These facts are: That on the 12th day of October, 1869, McCausland, in his own behalf, and as assignee of certain other creditors of Wells, instituted in one of the state courts an attachment suit against him, by virtue of which the sheriff has taken, and holds, all his property. It has been further proven that upon the day above mentioned the entire property of the respondent, if subjected to forced sale, would not have been sufficient to pay his debts.

The first question which arises in the case is, as to the fact of Wells' insolvency upon the 12th day of October instant—the day when his property was taken by the sheriff. If you believe from the evidence that Wells' property, if sold on that day, would not have produced money enough to pay his debts, then I charge you, as a matter of law, that he was insolvent, within the meaning of the bankrupt act. "A solvent man is one that is able to pay all his debts in full, at once or as they become due. Insolvency is merely the opposite of solvency. A man who is unable to pay his debts out of his own means, or whose debts cannot be col-

[1] [Reprinted from 3 N. B. R. 371 (Quarto, 95), by permission.]

lected out of such means by legal process, is insolvent; and this, although it may be morally certain that with indulgence from his creditors in point. of time, he may be ultimately able to satisfy his engagements in full. The term insolvency imports a present inability to pay. The probable or improbable future condition of the party in this respect does not affect the question. If a man's debts cannot be made in full out of his property by levy and sale on execution, he is insolvent within the primary and ordinary meaning of the word, and particularly in the sense in which the word is used in the bankrupt act." Burrill, Assignm. 38, 41; 4 Hill, 652; [Bradford v. Union Bank of Tennessee] 13 How. [54 U. S.] 67; In re Lewis [Case No. 8,311]; Foster v. Hackley [Id. 4,971].

Did the respondent "suffer" his property to be taken upon legal process, with intent to give a preference to the attaching creditor, or with intent to delay or defeat the operation of the bankrupt act? It is claimed by the respondent, and indeed it sufficiently appears from the evidence, that there was no collusion between his attaching creditor and himself. From all that appears from the evidence, Wells did nothing to influence the issue of the attachment by McCausland. But for all that, he did, I think, "suffer" his property to be taken on legal process, within the meaning of the act. That voluntary action on the part of the insolvent is not requisite to bring him within the effect of the act, is shown by the whole context of section 39. For instance, among the various acts of bankruptcy enumerated in that section is being imprisoned for debt for more than seven days, than which it is difficult to conceive a more involuntary proceeding. The fact is, that the bankrupt act was designed to compel a fair distribution of an insolvent's estate amongst all his creditors—and, under the act, it is the duty of one who is insolvent to apply to the bankrupt court in his own behalf. If he does not so apply, and some of his creditors take his property under legal process, he may be held to have suffered his property to be taken, and may be adjudicated a bankrupt at the instance of creditors whose claims have not been provided for. Entertaining this view of the law, I charge you that Wells did "suffer" his property to be taken under process of law. It is urged that he did not so suffer it to be taken, with the intent to prefer the attaching creditor, or with the intent to delay or defeat the operation of the bankrupt act. Upon this point I find the gist of the authorities so tersely and clearly stated in the American Law Review for April, 1869. p. 539. that I give you the text in charge: "If an insolvent debtor suffers his property to be taken on legal process, so that the natural and probable result will be to give a creditor a preference, he will be presumed to have intended to give such a preference; and if he could have prevented the taking by filing his voluntary petition in bankruptcy, and has not done so, he must be held to have 'suffered' the property to

be taken within the meaning of section 39"— citing numerous authorities. In this case Wells must have known that he was insolvent within the meaning of the act, as I have explained it to you; nor is it pretended that he did anything to prevent the taking of his property at the suit of McCausland. He must be held, therefore, to have suffered his property to be taken on legal process. with the intent to prefer one of his creditors, and with the intent to defeat the operation of the bankrupt act. See Avery v. Johann [Case No. 675]; In re Randal [Id. 11,551].